# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>         Plaintiff,<br><br>v.<br><br>LINDA COWAN,<br><br>         Defendant. | Case No. 17cr660-MMA<br><br>**ORDER DENYING DEFENDANT'S MOTION TO REDUCE SENTENCE PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)**<br><br>[Doc. No. 51] |

On June 1, 2017, Defendant Linda Cowan pleaded guilty to Count 1 of a two-count Information charging her with possessing with intent to distribute approximately 213.5 grams of methamphetamine (actual), in violation of Title 21, United States Code, section 841(a)(1) (Count 1), and being a felon in possession of a firearm, in violation of Title 18, section 922(g)(1) (Count 2). *See* Doc. No. 23. Defendant was sentenced to a custodial term of seventy (70) months, to be followed by five (5) years of supervised release. *See* Doc. No. 48. Defendant is currently serving the final months of her custodial term at Core Civic Ocean View, a Residential Reentry Center in San Diego, California. *See* Doc.

No. 56, Def. Decl. ¶ 3. According to the Bureau of Prisons, Defendant's anticipated release date is February 4, 2022.[1]

Defendant, proceeding through counsel, now moves the Court for early compassionate release and a corresponding reduction in sentence pursuant to 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act of 2018. *See* Doc. Nos. 51, 56. The government has filed a response in opposition to Defendant's motion. *See* Doc. No. 57. The Court finds the matter suitable for disposition on the current record and without a hearing. For the reasons set forth below, the Court **DENIES** Defendant's motion.

## DISCUSSION

Defendant seeks early compassionate release on the ground that her health is at risk due to the spread of the novel coronavirus disease, COVID-19, and the increased likelihood of contracting the virus while residing in a congregate living facility. Defendant is a fifty-year old who suffers from various chronic medical conditions which she states place her at a heightened risk of serious illness if she contracts the virus. Defendant further avers that the applicable statutory factors weigh in favor of her early release.

The government opposes Defendant's motion, arguing that Defendant's medical conditions do not place her at a sufficiently elevated risk to warrant early release. The government further argues that Defendant poses a danger to the community and is not a suitable candidate for early release.

### 1. Relevant Law

In 1984, Congress authorized compassionate release from prison under the criteria set forth in 18 U.S.C. § 3582(c)(1)(A) as part of the Comprehensive Crime Control Act. Under its original terms, only the Director of the Bureau of Prisons was authorized to file a motion for compassionate release pursuant to section 3582(c)(1)(A). The First Step Act

---

[1] *See* Federal Bureau of Prisons Online Inmate Locator, available at https://www.bop.gov/inmateloc (last visited 4/27/2021).

2

17cr660-MMA

went into effect on December 21, 2018. *See* First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194. Section 603(b) of the First Step Act modified section 3582(c)(1)(A), which now provides, in pertinent part:

> [T]he court, upon motion of the Director of the Bureau of Prisons, *or upon motion of the defendant* after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
> (i) extraordinary and compelling reasons warrant such a reduction; . . .
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A) (emphasis added).[2]

## 2. Analysis

As a threshold matter, the Court finds – and the parties agree – that Defendant has exhausted her administrative remedies. In August 2020, Defendant presented a request for early release to the warden of the facility where she was housed at the time; the

---

[2] Many years prior to this modification, the United States Sentencing Commission published a policy statement addressing the standards for early release. *See* U.S.S.G. § 1B1.13. However, as the Ninth Circuit recently explained, section 1B1.13 "is not an 'applicable policy statement[ ]' for 18 U.S.C. § 3582(c)(1)(A) motions filed by a defendant." *United States v. Aruda*, No. 20-10245, __ F.3d __, 2021 WL 1307884, at *4 (9th Cir. Apr. 8, 2021); *accord United States v. Elias*, No. 20-3654, 2021 U.S. App. LEXIS 251, at *2 (6th Cir. Jan. 6, 2021); *United States v. Jones*, 980 F.3d 1098, 1108-11 (6th Cir. 2020); *United States v. Brooker*, 976 F.3d 228 (2d Cir. 2020); *United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020); *United States v. McCoy*, 981 F.3d 271, 281-21 (4th Cir. 2020). Rather, the "Sentencing Commission's statements in U.S.S.G. § 1B1.13 may inform a district court's discretion for § 3582(c)(1)(A) motions filed by a defendant, but they are not binding." *Aruda*, 2021 WL 1307884, at *4. The government urges the Court to "hew[] close to the existing policy statement" but ultimately focuses on arguing that Defendant "has not satisfied her burden to show that release is warranted under the § 3553(a) factors, including the need to protect the public and satisfy other penological goals." Doc. No. 57 at 14, 15, 22-27.

warden recently denied her request. *See* Doc. No. 56, Def. Ex. L. Accordingly, she has exhausted her administrative remedies and the Court will consider her motion on its merits.

      a) <u>Extraordinary and Compelling Reasons</u>

Defendant argues that the possibility of contracting COVID-19 while residing at a congregate facility, medical allergies which make her unsuitable for vaccination, her age, and her chronic serious medical conditions, to wit, obesity, hypertension, anemia, hypothyroidism, severe depression, anxiety, and past substance use disorder, together constitute extraordinary and compelling reasons supporting early release and a corresponding reduction in her custodial term. The government acknowledges that obesity constitutes a relevant serious health condition, pursuant to federal agency guidance, but argues that hypothyroidism, mental health conditions, and past substance abuse do not elevate Defendant's risk such that it rises to the level of an extraordinary and compelling reason for early release.

Defendant is currently housed at Core Civic Ocean View, a Residential Reentry Center currently housing approximately 200 individuals. According to Defendant, she is living in a dorm-like setting, sharing bathroom facilities, and is unable to socially distance herself from her housemates. *See* Doc. No. 56, Def. Ex. M. ¶¶ 14-15. Defendant states that "inmates are quarantined before coming into the halfway house" but "staff members and others are not." *Id*. ¶ 17. Defendant further states that "the halfway house is a very open compound and the lack of social distancing, combined with the fact that employees come and go, scares" her. *Id*. ¶ 18.

While Defendant's apprehension is certainly understandable, neither party has provided information regarding the virus's actual impact on inmates or staff at Core Civic Ocean View. And neither the Bureau of Prisons nor Core Civic appear to have easily accessible, publicly available data regarding past or current infections at the San Diego

facility.³  In any event, the Centers for Disease Control and Prevention ("CDC") concluded that COVID-19 poses particular challenges to those living in congregate housing situations, particularly with respect to "social distancing to prevent the spread of COVID-19" because "[s]hared housing residents often gather together closely for social, leisure, and recreational activities, shared dining, and/or use of shared equipment, such as kitchen appliances, laundry facilities, stairwells, and elevators."⁴  Core Civic appears to have taken measures to protect the health of its staff and individuals residing in its facilities throughout the country.⁵  However, the nature of group living makes the threat of contagion an unfortunate reality despite precautions.  And, in light of her age and multiple medical issues, Defendant has sufficiently demonstrated that she is at risk of serious illness if she contracts the virus.  The CDC counsels that individuals like Defendant, who suffer from certain chronic conditions, including obesity, hypertension, and substance use disorders, are at a higher risk of severe illness from COVID-19.⁶

Assuming these circumstances rise to the level of "extraordinary and compelling," the Court must consider additional applicable statutory factors to determine whether early compassionate release and a corresponding reduction in sentence is appropriate.

b) Sentencing Factors

The Court must take into account the sentencing factors set forth in 18 U.S.C. § 3553(a).  Section 3553(a) provides:

---

³ *See, e.g.*, https://www.bop.gov/coronavirus/ (last visited 4/28/2021).  Core Civic Ocean View is not included on the list of facilities listed for which the Bureau of Prisons has collected relevant data.

⁴ *See* https://www.cdc.gov/coronavirus/2019-ncov/community/shared-congregate-house/guidance-shared-congregate-housing.html (last visited 4/27/2021).

⁵ *See, e.g.*, https://www.corecivic.com/hubfs/_files/CoreCivic%20Response%20to%20COVID-1.pdf (last visited 4/27/2021) (outlining the measures taken by Core Civic to address pandemic-related health and safety concerns).

⁶ *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited 4/28/2021).

> Factors to be considered in imposing a sentence.—The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider—
>
> > (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> >
> > (2) the need for the sentence imposed—
> >
> > > (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> > > (B) to afford adequate deterrence to criminal conduct;
> > > (C) to protect the public from further crimes of the defendant; and
> > > (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> >
> > (3) the kinds of sentences available;
> >
> > (4) the kinds of sentence[s] and the sentencing range established for—
> >
> > > (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines ... [;]
> >
> >  ( . . . )
> >
> > (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
> >
> > (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

These factors do not weigh in Defendant's favor. Defendant's current offense was a serious drug trafficking crime, and while it did not involve violence per se, she was apprehended in possession of a firearm. Defendant has an extensive criminal history,

including multiple prior convictions for crimes victimizing members of the San Diego community.[7] In light of the seriousness of the conviction offense and Defendant's many priors, any reduction in Defendant's sentence – even the relatively modest reduction she requests – would fail to "reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment" in this case. *Id*. § 3553(a)(2)(A). Moreover, Defendant's early release might undermine the deterrent effect of the sentence and potentially place the public at risk.

Defendant has served more than two-thirds of the custodial term imposed in this case – a significant period of time. However, the Court sentenced Defendant to a term well below the initial Guidelines range calculation and the ultimate recommendations of United States Probation and the government. A reduction in that term would hazard creating an "unwarranted" disparity in Defendant's sentence and would fail to reflect "the kind of sentences . . . established for the applicable category of offense." *Id*. § 3553(a)(2)(4),(6).

Furthermore, the Court finds it particularly important for an individual with Defendant's history of criminal activity and substance abuse to spend a portion of her sentence "under conditions that will afford [her] a reasonable opportunity to adjust to and prepare for . . . reentry . . . into the community." *Id.* § 3624(c)(1). Defendant's current placement at Core Civic Ocean View is an important step in completing her term of confinement and making a successful transition back into society.[8] Early release would undermine the benefits of this delicate process.

---

[7] For example, "On September 18, 2011, police officers in Oceanside responded to a burglary of a business . . . Officers subsequently learned that the bank information for the business, along with employee names and social security numbers had also been compromised, and several fraudulent purchases had been made on their business account. [Defendant] was subsequently identified as having passed several fictitious checks using the personal information from one of the employees, and the victim business." Doc. No. 28 at 13.

[8] The next potential step would be placement in home confinement. Defendant should be eligible for home confinement on or about August 4, 2021. *See* Def. Ex. D; *see also* 18 U.S.C. § 3624(c)(2) ("The

Finally, the Court acknowledges that during her period of incarceration, Defendant dedicated significant time to self-improvement, availing herself of educational opportunities and substance abuse treatment, and otherwise maintaining an exemplary record. These accomplishments are admirable, and the Court does not wish to diminish their importance in any way. But after consideration of the factors set forth in section 3553(a), the Court finds that those factors weigh firmly against Defendant's early release.

## CONCLUSION

Based on the foregoing, the Court **DENIES** Defendant's motion for early compassionate release and a corresponding reduction in sentence.

**IT IS SO ORDERED**.

DATE: April 29, 2021

HON. MICHAEL M. ANELLO
United States District Judge

---

Bureau of Prisons shall, to the extent practicable, place prisoners with lower risk levels and lower needs on home confinement for the maximum amount of time permitted under this paragraph.").